UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
GRAYLING SMITH, :
:
                            Plaintiff, :
:
            - v - :
:
THE CITY OF NEW YORK; C.O. GONZALES :
Shield #17148, in his official and individual :
capacities; C.O. SQUILLARO Shield #18036, in his :
official and individual capacities :
                            Defendants. :
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/28/2016

1:15-cv-7910-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

      Plaintiff Grayling Smith, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against the City of New York and two Department of Corrections ("DOC") Correctional Officers, alleging that he was injured when the DOC bus transporting him from Bellevue Hospital back to Rikers Island was involved in an accident. Mr. Smith claims that he was denied prompt medical attention at the scene of the accident, that the correctional officers ignored his injuries and that, instead of returning immediately to Bellevue Hospital, the correctional officers first transported Mr. Smith back to Rikers Island, delaying his receipt of medical attention by several hours.

      Mr. Smith brings claims under the Fourth and Eighth Amendments to the U.S. Constitution as well as municipal liability under § 1983. Defendants moved to dismiss the complaint in its entirety. Because Mr. Smith fails adequately to plead the elements of a claim for deliberate indifference to serious medical need under the Eighth Amendment and the elements of a municipal liability claim, Defendants' motion to dismiss is GRANTED.

## II.     BACKGROUND

### A.  Factual Background[1]

On July 31, 2015, Mr. Smith, who was then incarcerated at Rikers Island, was transported to Bellevue Hospital for a medical appointment.  Second Amend. Compl. ("SAC"), Dkt. No. 39 at 4, ¶ 12.  Mr. Smith alleges that, on the return trip to Rikers Island, the DOC bus transporting him was involved in a car accident in the vicinity of East 37th Street in Manhattan.  *Id.* at 16.  Specifically, Mr. Smith alleges that Officer Gonzales drove the DOC bus "at a high rate of speed" and "then came to an abrupt h[a]lt" when it collided with a Honda.  *Id.*  Mr. Smith alleges that the impact of the collision "ripped the back bumper off the Honda," and that, because he was restrained and handcuffed to another inmate on board the bus, he was "thrown into the steel partition" upon impact, "which cause[d] injuries to [his] neck and lower back."  *Id.* at 16-17.

As alleged in the SAC, immediately after colliding with the vehicle, Officer Gonzales "rushed off the bus to confront the" other driver, and both Officer Gonzales and Officer Squillaro ignored the six to seven detainees on the bus who were screaming in pain and yelling for medical attention. *Id.* at 16.  Although the inmates informed the officers that they were injured and in need of medical attention, Mr. Smith alleges that their calls were ignored.  *Id.* at 17.  According to Mr. Smith, Officer Squillaro told the inmates that he would inform the captain of the accident and their injuries upon the captain's arrival, but neither Officer Squillaro nor Officer Gonzalez did so.  *Id.* at 16-17.  It was not until approximately four hours later, Mr. Smith alleges, that the correctional officers came back aboard the DOC bus.  *Id.*  And when they did, Mr. Smith alleges, Officer Gonzalez was apparently

---

[1] Unless otherwise noted, the facts are taken from the second amended complaint, and are accepted as true for the purposes of this Rule 12(b)(6) motion.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

surprised that the inmates were "filling out injur[y] report[s]," telling the inmates that "the[re] was 'no impact.'" *Id.* at 17.

According to the SAC, although Mr. Smith did not receive medical attention at the scene of the accident, he received medical attention following his return to Rikers Island. *See id.* at 5, ¶ 13. Mr. Smith was prescribed pain medication and physical therapy. *Id.* at 18-20. Mr. Smith further alleges that the injury to his neck and back resulted in "constant" and "excessive pain" as well as "emotional anguish, pain[, and] suffering." *Id.* ¶ 11 & pp. 7, 17. Mr. Smith also alleges that the pain persisted and that he has "been in pain for the last (14) months." *Id.* at 17. Mr. Smith also asserts that he has trouble sleeping and that he experiences numbness and difficulty executing basic daily tasks. *Id.* at 18.

### B. Procedural Background

Mr. Smith commenced this action on October 6, 2015, alleging that the DOC officers who supervised his transport from Bellevue Hospital back to Rikers Island acted with deliberate indifference to his medical needs and, thus, violated his rights under the United States Constitution. Dkt. No. 2. Mr. Smith also brought a municipal liability claim against the City of New York for failure to equip DOC busses with seatbelts and airbags. *Id.* On November 24, 2015, the Court issued an opinion and order, dismissing Mr. Smith's complaint for failure to state a claim, and directing Mr. Smith to amend his complaint within sixty days of that order. Dkt. No. 10. On January 25, 2016, Mr. Smith filed his amended complaint, which largely repeated the same allegations, but included additional details about the incident at issue and identified the role and involvement of the individual defendants named in the complaint. Dkt. No. 14. On June 13, 2016, Defendants moved to dismiss the amended complaint. Dkt. No. 29. In light of Defendant's motion to dismiss, on June 14, 2016 the Court entered an order granting Mr. Smith leave to amend his complaint once again pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Dkt. No. 35. The

Court directed Mr. Smith to either amend his complaint or file an opposition to Defendants' motion to dismiss no later than July 14, 2016. *Id.* The Court's order also gave Defendants the option to file an answer, a new motion to dismiss, or a letter stating that they relied on the previously filed motion if Plaintiff amended his complaint. *Id.*

By letter dated June 27, 2016, Mr. Smith requested an extension of time to file his amended complaint. Dkt. No. 37. The Court granted Mr. Smith's request, and extended the deadline for him to file a second amended complaint to August 8, 2016. Dkt. No. 38. Mr. Smith filed his second amended complaint on July 19, 2016. Dkt. No. 39. The allegations in the SAC largely track those in Mr. Smith's original and first amended complaints. *See Id.*

By letter dated August 9, 2016, Defendants notified the Court that they intended to rely on the previously filed motion to dismiss. Dkt. No. 40. In light of Defendants' letter, by order dated August 10, 2016, the Court reminded Mr. Smith that he was required to file an opposition to Defendants' motion to dismiss within one month. Dkt. No. 41. Because Mr. Smith did not file his opposition within that time frame, on September 20, 2016, the Court entered a follow-up order, *sua sponte* extending the deadline for Mr. Smith to file his opposition to October 4, 2016. Dkt. No. 42. The Court's September 20, 2016 order expressly stated that, "[i]n the event that Plaintiff fails to file an opposition" by that date, "the Court will decide Defendants' motion to dismiss in the ordinary course and without the benefit of Plaintiff's opposition." *Id.* As with all prior orders, the Court mailed its September 20, 2016 order to Mr. Smith by certified mail. However, because Mr. Smith's address had changed, on September 27, 2016, the order was returned to the Court as undeliverable.

On September 26, 2016, the Court received a letter from Mr. Smith, requesting an additional extension to file his opposition and a letter stating that his address had changed. Dkt. Nos. 43, 44. The Court granted the request, extending the deadline for Mr. Smith to file his opposition until October 17, 2016. Dkt. No. 45. Mr. Smith failed to file an opposition by that deadline. On

October 24, 2016, the Court entered another order, again *sua sponte* extending the deadline for Mr. Smith to file his opposition until October 31, 2016 and reiterating that, if he failed to do so, "the Court will decide Defendants' motion to dismiss in the ordinary course and without the benefit of Plaintiff's opposition." Dkt. No. 46. As of the date of this opinion, Mr. Smith has not filed an opposition.

### III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

While a complaint need not provide "detailed factual allegations," it nevertheless must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The facts pleaded "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (citations omitted). The court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

Furthermore, "[a] document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts are to "liberally construe pleadings and briefs submitted by *pro se* litigants . . . reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007). "[D]ismissal of a *pro se* complaint is

5

nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Rahman v. Schriro,* 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir. 1997)).

## IV.   DISCUSSION

### A.   Eighth Amendment Claim

"To state a claim under § 1983 for deprivation of medical treatment in violation of the Eighth Amendment, a plaintiff must show that the defendant acted with 'deliberate indifference to serious medical needs.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Crucially, "not every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when two requirements—one objective and one subjective—are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citation and internal quotation marks omitted).

"First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). This standard "contemplates 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1999) (quoting *Hathaway*, 37 F.3d at 66). Second, the defendant "must act with a sufficiently culpable state of mind." *Hathaway*, 37 F.3d at 66. "Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Salahuddin*, 467 F.3d at 280). Thus, in order to state a claim for deliberate indifference to serious medical needs, a plaintiff must allege that the defendant "knew of and disregarded an excessive risk to [plaintiff's] health or safety and that she was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also

drew the inference." *Caiozzo*, 581 F.3d at 72 (quoting *Farmer v. Brown*, 511 U.S. at 825, 837 (1994) (alterations and internal quotation marks omitted)).

The gravamen of Mr. Smith's complaint is not that he was denied medical attention altogether, but, rather, that medical care was delayed. Specifically, Mr. Smith alleges that Officers Gonzales and Squillaro violated his Eighth Amendment rights when they denied him immediate medical attention at the scene of the accident and failed to transport him back to Bellevue Hospital or notify emergency medical services immediately after the accident. Dkt No. 39 at 7, ¶ 18.[2]

When a plaintiff alleges a delay in medical treatment rather than a complete denial of treatment, "it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, 'in objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Snyder v. Alam*, No. 15 CV 4033 (VB), 2016 WL 2642226, at *3 (S.D.N.Y. May 6, 2016). When determining if a delay in treatment led to "sufficiently serious" harm, "the actual medical consequences that flow from the alleged denial of care will be highly relevant." *Carpenter*, 316 F.3d at 187; *see also Snyder*, 2016 WL 2642226, at *4 (stating that "only those injuries plaintiff specifically attributes to the delay will be considered").

"[A] short interruption of care, even if the underlying medical condition is serious, does not constitute a serious medical need where the 'alleged lapses in treatment are minor.'" *Bell v. Jendell*, 980 F. Supp. 2d 555, 559-60 (S.D.N.Y. 2013) (quoting *Carpenter,* 316 F.3d at 186)). However, allegations

---

[2] A pretrial detainee in state custody, "receives protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment," rather than the Eighth Amendment, which is applicable only to convicted prisoners. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). In the Second Circuit, courts analyze deliberate indifference claims "under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Id.* at 72. Thus, while it is unclear from Mr. Smith's allegations whether at the time of the incident he was a pretrial detainee or a post-conviction inmate housed at Rikers Island, the applicable legal standard is the same.

that the defendant's delay in treating a minor or ordinary medical condition can nevertheless "become a constitutional violation if the condition worsens [as a result of the delay] and creates a '"substantial risk of injury."'" *Graham v. Wright*, No. 01 CIV. 9613 (NRB), 2004 WL 1794503, at *4 (S.D.N.Y. Aug. 10, 2004), *aff'd*, 136 F. App'x 418 (2d Cir. 2005) (quoting *Smith*, 316 F.3d at 186); *see also Snyder*, 2016 WL 2642226, at *3 (stating that "a plaintiff may show delayed medical care warrants constitutional protection by alleging the delay worsened his condition or increased the risk of future injury") (citations omitted)). "Conversely, delay in treating a life-threatening condition may not violate the Eighth Amendment if the lapse does not cause any further harm beyond that which would occur even with complete medical attention." *Graham*, 2004 WL 1794503, at *4 (citing *Smith*, 316 F.3d at 186).

Here, Mr. Smith's SAC contains no allegations that the delay caused or exacerbated his injury. Mr. Smith alleges that he and other inmates were left without treatment aboard the bus for approximately three-and-a-half to four hours before the correctional officers directed the DOC bus back to Rikers Island. SAC at ¶ 13 & p. 18. Although Mr. Smith alleges that the correctional officers "deni[ed] to give the plaintiff immediate medical attention and provide the plaintiff with medical treatment which caused the plaintiff extreme and excessive pain as a transportation bus ride all the way back to Rikers Island," where he received medical attention, there are no allegations that the delay itself was the cause of Mr. Smith's "extreme and excessive pain" or that it made the pain worse. *See* SAC at 7.[3] However, where a delay in providing medical attention is neither the underlying cause of a plaintiff's condition nor contributed to a worsening in the condition, courts have found that the objective prong of a deliberate indifference claim is not met. *See, e.g.*, *Frith v.*

---

[3] In his SAC, Mr. Smith also alleges that his physical therapy treatment was delayed by approximately two months and that he was denied a Magnetic Resonance Imaging test for not completing his physical therapy regimen. *See, e.g.*, SAC at 18-19. Those allegations cannot be plausibly linked to the conduct of the correctional officer who accompanied Mr. Smith on the date of the incident.

*City of N.Y.*, No. 15 CIV. 5688 (NRB), 2016 WL 4705155, at *2 (S.D.N.Y. Aug. 25, 2016) (finding that the objective prong was not met where the plaintiff did "not allege that the delay itself caused or exacerbated the infection, caused him extreme pain, or caused any permanent harm."); *Johnson v. City of N.Y.*, No. 12 CIV. 8265 LAK HBP, 2014 WL 5393181, at *6 (S.D.N.Y. Oct. 21, 2014), *report and recommendation adopted*, No. 12-CV-8265 LAK, 2014 WL 6455162 (S.D.N.Y. Nov. 17, 2014), *aff'd*, 633 F. App'x 37 (2d Cir. 2016) (finding that the objective prong was not met where plaintiff "has provided no evidence that a four and one-half hour delay between his arrest and his being seen at Bellevue resulted in any worsening of his condition or resulted in the exacerbation of his injury"); *Poindexter v. Davis*, No. 11 CIV. 2928 PKC, 2012 WL 5465465, at *5 (S.D.N.Y. Nov. 9, 2012) (granting summary judgment in favor of defendants and concluding that the objective prong was not met because "a six-hour period during which plaintiff sat with an ice pack on his injured hand does not approach the threshold requirement of seriousness for a deliberate indifference claim to survive"); *Mitchell*, 2011 WL 503087, at *4 (finding a two- to three-hour delay before treatment for foot pain was not sufficiently serious to state a claim under the Eighth Amendment); *Cain v. Jackson*, No. 05 CIV.3914 LAP MHD, 2007 WL 2193997, at *6 (S.D.N.Y. July 27, 2007) (finding a four-hour delay in allowing plaintiff to visit a correctional facility's medical unit for back pain was not sufficiently serious to state a claim under the Eighth Amendment).

The Court does not discount any pain and discomfort Mr. Smith experienced in the period between the time of the accident and the time he was seen at Rikers Island. But the question before the Court is whether the conduct of the correctional officers is actionable under the Constitution. Mr. Smith's allegations in the SAC that he experienced pain for approximately four and a half hours before receiving medical attention—where the delay neither caused nor exacerbated his medical condition—do not rise to the level of an Eighth Amendment violation. Because Mr. Smith has

failed to allege sufficient facts to meet the objective prong of the deliberate indifference test, his Eighth Amendment claim must be dismissed.

### B. Fourth Amendment Claim

Mr. Smith's SAC also brings a Fourth Amendment claim in connection with the same allegations. Specifically, Mr. Smith alleges that his [F]ourth [A]mendment[] right to be safe and secure in his person, home, and effects," was violated due to Officer Gonzales's unsafe driving. SAC at 6, ¶ 17. The Fourth Amendment is inapplicable to Mr. Smith's claims.

The Fourth Amendment to the Constitution states:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV; *see also Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009) ("The Fourth Amendment 'right of the people to be secure in their persons . . . against unreasonable searches and seizures' generally requires a law enforcement officer to have probable cause for conducting a search") (alteration in original); *Kentucky v. King*, 563 U.S. 452, 459 (2011) ("The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity."). Mr. Smith's allegations regarding a delay in his medical care following the accident do not fall under the Fourth Amendment; Mr. Smith was neither arrested nor subject to a search as a result of the collision. Accordingly, Mr. Smith's Fourth Amendment claim must be dismissed.

### C. Municipal Liability Under § 1983

Mr. Smith also asks the Court to "[p]lease stress the importan[ce] of safety when it come[s] to transporting inmates" to the Department of Corrections. Dkt. No. 39 at 20. The Court construes this as a claim for municipal liability under § 1983.

To hold a municipality liable under Section 1983, a plaintiff must plead facts supporting a plausible inference that the constitutional violation they suffered was caused by a municipal policy or custom. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). To state a claim against the City of New York, a plaintiff must both "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" and "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 691).

For the reasons already addressed, Mr. Smith fails to plausibly allege a constitutional violation. "It is well established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation." *Deraffele v. City of New Rochelle*, No. 15-cv-282 (KMK), 2016 WL 1274590, at *17 (S.D.N.Y. Mar. 30, 2016) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)). In addition, the SAC is devoid of any allegations concerning a custom or municipal policy that can be linked to Mr. Smith's injury. Mr. Smith simply implores the Court to "stress the importance of safety" when transporting inmates and of following the "[T]hree Cs[:] Care, Custody and Control." SAC at 20. Accordingly, Mr. Smith's *Monell* claim must be dismissed for failure to adequately plead an underlying constitutional violation.

### D. Leave to Amend

In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In addition, "leave to replead should be liberally granted to *pro se* litigants." *Vallen v. Plan*, No. 15-CV-0703(JS)(ARL), 2016 WL 482026, at *4 (E.D.N.Y. Feb. 4, 2016) (citing *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). As the Second Circuit has instructed, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). In the absence of such reasons, whether "'apparent or declared,'" leave to amend should be granted. *Abbatiello v. Monsanto Co.*, 571 F. Supp. 2d 548, 552 (S.D.N.Y. 2008) (quoting *Forman*, 371 U.S. at 182).

Despite the fact that Mr. Smith has amended his complaint twice—and has forgone the opportunity to file an opposition to Defendants' motion—the Court cannot conclude that allowing Mr. Smith to amend his complaint once again would be futile, unduly prejudice Defendants, or that Mr. Smith would amend his complaint in bad faith. The Court is also mindful that "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen*, 746 F.3d at 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). Thus, the Court grants Mr. Smith leave to amend the complaint to cure any deficiencies identified in this opinion.

### IV. CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is GRANTED. Mr. Smith is granted leave to file an amended complaint no later than twenty one (21) days from the date of this opinion and order.

The Court will mail Mr. Smith a copy of this opinion and order together with copies of the unpublished decisions cited herein.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 29.

SO ORDERED.

Dated: December 28, 2016
New York, New York

GREGORY H. WOODS
United States District Judge